**John H. ROBINSON, Appellant,**

v.

**Margaret M. HECKLER, Secretary of the Department of Health and Human Services, Appellee.**

**No. 85–1639.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 2, 1985.

Decided Feb. 21, 1986.

---

James B. Weeks (Gabriel, Berry, Weston & Weeks, Gary B. Goodman, Greensboro, N.C., on brief), for appellant.

Sharon F. Adams, Regional Atty., Atlanta, Ga., (Kenneth W. McAllister, U.S. Atty., Greensboro, N.C., on brief), for appellee.

Before WINTER, Chief Judge, MURNAGHAN, Circuit Judge, and SWYGERT, Senior Circuit Judge of the United States Court of Appeals for the Seventh Circuit, sitting by designation.

MURNAGHAN, Circuit Judge:

## FACTS

On September 8, 1966, John H. Robinson was born to Mary Jane Robinson. She and her husband had separated in 1964, and she established a liaison with John Howard Jones, Jr. Mr. Jones could not wed Mrs. Robinson because her marriage had not been dissolved prior to his involvement in a serious motorcycle accident which occurred on January 13, 1966, eight months before the birth of John H. Robinson. Thereafter, Jones lived until 1972, but in seriously debi-litated condition which served to inhibit his marriage to Mary Jane Robinson.

On June 8, 1971 Mary Jane Robinson applied on behalf of John H. Robinson[1] for social security benefits as the child of the wage earner, John Howard Jones, Jr. The application was denied on August 31, 1971. Notification obviously came shortly thereafter, for Mary Jane Robinson declined to seek reconsideration, although urged by counsel for the grandmother of John H. Robinson to do so. The denial of the application, therefore, became final.

On April 30, 1980, over eight years after the death of John Howard Jones, Jr., Mary Jane Robinson filed another application for John H. Robinson, seeking to resurrect the 1971 claim, although as originally filed her application did not refer to the 1971 filing. The Social Security Agency denied relief on the grounds of failure to establish the claim, but on application to the United States District Court for the Middle District of North Carolina for judicial review the matter was remanded on the grounds that the decision was not supported by evidence.

On remand, paternity was established, as was the fact that John Howard Jones, Jr. had been living with Mary Jane Robinson to an extent sufficient to establish a claim to benefits in favor of John H. Robinson.[2] However, the Appeals Council, contending that the 1971 application had become administratively final, declined to award benefits for any period prior to 1980. It did, however, award benefits for the period from and after the effective date of the 1980 application.

Mary Jane Robinson appealed once more, this time from the denial of benefits for the period from 1971 to 1980. The district court affirmed the Agency's decision and further denied an application on behalf of John H. Robinson for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A).

---

1. He, being under five years of age, clearly was in no position to act for himself.

2. The ALJ found waiver of administrative *res judicata* and determined that an award dating back to 1971 was appropriate.

In the course of the initial appeal, the magistrate to whom the case had been assigned reached, *sua sponte,* the conclusion that investigation by the Agency of the 1980 application had not simply stopped at the grounds of administrative *res judicata,* but rather had proceeded to determine on the merits that eligibility was not made out in any event, either as to support contributions by John Howard Jones, Jr., or as to living by him with Mary Jane Robinson. On that basis the magistrate, although the point had not been raised by either of the parties, suggested that *McGowen v. Harris,* 666 F.2d 60 (4th Cir.1981), required a determination that administrative *res judicata* had been eliminated as a defense, since there had been consideration of the merits of the claim. Acceding to that judicial pronouncement, the Agency determined that, effective in 1980, John H. Robinson did meet the requirements of a grant of benefits insofar as paternity and "contribution" or "living with" requirements were concerned and awarded him the requested relief for the period from 1980 forward. John H. Robinson's counsel concedes that

formal proof of paternity had not been presented in the 1971 proceedings.

## THE MERITS

 There is a major and controlling difficulty with the way in which the case has proceeded. Assuming that the facts of *McGowen* otherwise parallel those of the present case, there is, nevertheless one large difference McGowen's second application occurred within two years of the denial of the first application. The second application on behalf of John H. Robinson came after a lapse of nearly nine years. The pertinent regulation sets a maximum for reopening at four years.[3] Accordingly, *McGowen* should not have here been applied.[4]

Following inexorable logic, had the point been preserved for appeal which it was not only because of the exercise by the Agency of its discretion in favor of John H. Robinson we might well be compelled to require the striking out of the award of benefits from 1980 forward, as well as affirm the denial of benefits from 1971 to 1980. *See McGowen, supra,* 666 F.2d at 67.[5] How-

---

**3.** 20 C.F.R. § 404.988(b) permits reopening of a determination by the Agency for good cause within four years of the date of the notice of the initial determination. 20 C.F.R. § 404.988(c) permits reopening at any time, for two of the specified reasons, neither of which, however, is applicable to the facts of the instant case, *i.e.,* a) the initial determination was obtained by fraud or similar fault, or b) there was an error appearing on the face of the evidence. There is no contention that the Agency committed fraud. The assertions that Mary Jane Robinson's behavior, in her representative capacity, in not pursuing the 1971 claim is similar to fraud or that fraud on her part is what the regulation sought to cover border on the frivolous. *Cf. Holloway v. Schweiker,* 724 F.2d 1102, 1105 (4th Cir.1984), *cert. denied,* 467 U.S. 1217, 104 S.Ct. 2664, 81 L.Ed.2d 369 (1984).

Error on the face of the evidence does not encompass a disputed issue of fact since, almost as a matter of definition, when facts are in dispute no single answer is evident. Furthermore, paternity not having been established in 1971, error could scarcely have been established on the face of the evidence pertaining to the initial application.

Obviously McGowen, the lapse being less than four years, was not barred from seeking reopening under 20 C.F.R. § 404.988(b). Just as clearly, John H. Robinson was precluded from doing

so. *See McGowen,* 666 F.2d at 65. "Even though it is the same claim, the Secretary may, nevertheless, *within time limits* and for 'good cause' shown reopen the claim...." (Emphasis supplied).

**4.** We do not make anything of the fact that, in the end, the decision in *McGowen* fully favored the Secretary. The district court was held properly to have dismissed for lack of jurisdiction on administrative *res judicata* grounds, the action to review the Secretary's denial of the claim. *McGowen, supra,* 666 F.2d at 66. The detailed attention paid by the court to the matter of possible waiver of administrative *res judicata* as a defense makes us loath, however, to label its observations "mere dicta." While it can be contended that the ultimate result on the merits rendered superfluous the resolution of the issue of waiver, it is more persuasive an argument that the question of whether there was jurisdiction to review the dismissal of the claim had first to be decided, irrespective of what the decision on the merits might ultimately turn out to be.

**5.** It might be contended that in addressing the claimant's "new" evidence of biological parentage through acknowledgement and of substantial support by the wage earner, and in

ever we are not called upon to address the question insofar as the merits are concerned,[6] inasmuch as the Agency humanely consented to and has not appealed from the award of benefits from 1980 on.[7]

There were also due process denial contentions made on behalf of John H. Robinson, primarily growing out of supposed but unsubstantiated mental incompetence in 1971 and thereafter of Mary Jane Robinson. We pause to mention, but do not discuss at length, the attempt somehow to bolster that contention with the observation that John H. Robinson, being less than five years old in 1971, was without competence as a consequence of his extreme youth. However, it is that very consideration which has led to his mother's acting for him. It is her competence *vel non* which is controlling, not that of John H. Robinson. One may not have things both ways, relying on incompetence when it is in one's interests to do so, while simultaneously availing one's self of a guardian to act for one.

 It is our preference to address every facially arguable contention made but ones so farfetched they tend to denigrate the Fifth Amendment to the United States Constitution properly should not be dignified by detailed response. To do so would suggest substance where none, in fact, exists and would tend to trivialize a

document which should be reserved for situations where an argument of reasonable weight can be advanced. Were the suppositious lack of mental ability of Mary Jane Robinson to appreciate the necessity for taking steps to preserve the right to an evidentiary hearing in 1971 following denial of the claim sufficient to prove mental illness under *Schrader v. Harris*, 631 F.2d 297 (4th Cir.1980), the defense of administrative *res judicata* would become largely a dead letter. On analogous reasoning, nearly every committer of a serious crime of violence would be classifiable, presumptively at least, as insane.

It should not be overlooked that there has been no request on behalf of John H. Robinson for a hearing to determine the mental competency or lack thereof of Mary Jane Robinson. Had there been, the burden of proof would have rested on John H. Robinson. *Schrader, supra* 671 F.2d at 303. Instead, we are simply asked to take on faith a conclusion not pressed in hearings before the Agency or in the district court. From a reading of the initial complaint filed on December 15, 1981, one receives not the slightest inkling that the 1971 proceedings had taken place. Amendment of the complaint of December 8, 1983, however, set forth reasons why the doctrine of administrative *res judicata*, relying on the 1971 proceedings, should not be

addressing the claimant's "new" legal theories based upon the intestacy laws of Maryland and Michigan, the ALJ and the Appeals Council in legal effect, though not formally, reopened the claim, thereby exposing the Secretary's final decision to judicial review. We do not think that, properly assessed, this is the correct interpretation of the administrative actions.

6. It does, however, play a role when we come to consider Robinson's Equal Access to Justice Act claim.

7. Nor need we investigate the question of whether, when the Agency, despite a complete administrative *res judicata* bar, nevertheless, considers a claim on the merits to some extent, a) by doing so it of necessity waives entirely the *res judicata* defense or b) it may elect to proceed in a tentative way, spelling out that it is doing just that, to determine whether, as a matter of

administrative grace, it should allow benefits from and after the date of the second application. *McGowen, supra,* 666 F.2d at 67–68, addresses the second question, but it must be appreciated that, in the end, what was uttered was, in one principal respect, not essential to the disposition of the case. If the answer reached had only been "assumed," not "decided," the ultimate outcome of the case would not have differed. We also proceed, therefore, on merely an assumption, not taking, as finally decided, in a binding precedential fashion, the question. Not addressing the question we, nevertheless, are struck by the likelihood that, if the former conclusion were reached, the result might well be the throttling prior to birth of any humane tendencies on the part of the Department of Health and Human Services and lead HHS vigorously to apply to the fullest possible extent administrative *res judicata* in every case, however equitable the grounds might be to permit an award limited to benefits *in futuro.*

deemed applicable. The amendment nowhere intimates a lack of mental competence on the part of Mary Jane Robinson. Her representation of John H. Robinson as his guardian *ad litem* has continued undisturbed until the present.

That such is the case is hardly surprising inasmuch as counsel for the claimant, on February 11, 1981, called Mary Jane Robinson (her remarried name being Mary J. Young) to testify as to very material historical facts relating to proof of paternity and support. The step is not consistent with the belated assertion of mental incompetence on her part. Nevertheless, we do not address and do not intend to foreclose the possibility that further proceedings in the way of a new claim may be instituted alleging other independent evidence of mental incompetence of Mary Jane Robinson. *Leviner v. Richardson*, 443 F.2d 1338, 1343 (4th Cir.1971). We express no opinion as to the viability of such an attempt.

The attack all along has been directed to the issue of waiver of an administrative *res judicata* defense which would have been available if pressed, not to a contention that the 1971 denial of benefits rested *ab initio* on an insubstantial basis because of the mental incompetence of the applicant's representative.

## ATTORNEY'S FEES

■ Since the award for 1980 on was the result of administrative largesse, not properly compellable by legal process, and one for which an appeal by John H. Robinson was not required, the administrative decision having been in his favor, the situation is not an appropriate one for allowance of attorney's fees under the Equal Access to Justice Act.[8] While the matter is by no means entirely free from doubt, we assume for present purposes that, as the district judge held, John H. Robinson has "pre-

vailed." Nevertheless, we are satisfied that the special circumstances of the case in any event make an award of attorney's fees unjust. While the point was not asserted in the district court, it is one the judge mentioned in his opinion. He was fully aware of it, so the primary reason for refusing to consider it (*see United States v. One 1971 Mercedes Benz*, 542 F.2d 912, 915 (4th Cir.1976)) is not present in all its usual force. Most importantly, we are at one with the conclusion of the district judge that the position of the Government was substantially justified. Accordingly, the application for such fees is denied, and the judgment of the district court affirmed in all respects.

AFFIRMED.

SWYGERT, Senior Circuit Judge.

Concurring in part and dissenting in part. Although I concur in the result reached, except as to attorney's fees, I write separately to indicate my views of the case.

I concur with the majority that the denial of the 1971 claim was not reopened. I believe, however, that the majority's statement that "[a]ccordingly, *McGowen* should not have here been applied," *supra* at 1146, may create confusion about the true holding of *McGowen*. In *McGowen* the claimant seeking a surviving child's insurance benefits filed an original application which was denied and then filed his second application within two years of the denial of the first. The claimant was not time-barred because the Secretary may reopen a final determination based upon good cause (under 20 C.F.R. § 404.989), such as for "new and material evidence" furnished. *Id.* at 65. That "good cause" reopening is limited by the regulations to a time period of within four years of the date of the notice of the initial determination. 20 C.F.R. § 404.-988(b).

---

**8.** It is relevant to observe that, through the initial appeal, irrespective of the outcome the Government took a legally supportable position that all benefits, pre- or post-1980, should be denied. The genesis of the claim pertaining to the period from 1980 on was the discretionary action of the Agency and once it was taken the claim required no legal action on the part of counsel for John H. Robinson.

There was no need in *McGowen* to confront the more difficult question presented by the instant case: Can there be a discretionary reopening where the second application was filed almost nine years after the first? There is nothing in the *McGowen* decision that limits discretionary reopenings to four years under "good cause." Just as the Secretary can reopen a final determination based upon good cause, so can the Secretary reopen a final determination *at any time*—without violating federal law or regulations—if any of the conditions set out in sections 404.988(c)(1)–(10) are satisfied. The holding in *McGowen*, as I view it, is not that there is a four-year limitation on all reopenings, but that when a discretionary reopening is possible under the regulations, the Secretary may conduct a "threshold review" (to determine whether a full reopening on the merits is justified), without thereby exposing the Secretary's final decision to judicial review. *Id.* at 67.

The majority opinion does recognize in a footnote, *supra* at 5 n. 3, that a reopening is possible beyond the four-year limitation when the conditions of fraud or similar fault, or error on the face of the evidence are met. 20 C.F.R. § 404.988(c)(1) and (8). But the majority refutes claimant's arguments that reopening of the 1971 claim occurred on one of these grounds. A review of the facts convinces me that the issue of whether there was "error on the face of the evidence" is much closer than the majority's footnote indicates.

Robinson argues that the Secretary, in 1971 and 1975, erred in stating that she did not allege evidence of "living together or contributing to support." However, I must ultimately agree with the majority that there was no statutory ground to reopen the 1971 denial on the basis of an error as to whether "living with" had not been alleged. This is because Robinson, through her own negligence, simply failed to produce evidence in 1971 on the second-required prong of eligibility for her son: paternity.

Therefore, because none of the criteria for reopening "at any time" provided in section 404.988(c) are applicable in this case, the new and material evidence submitted with the application dated April 30, 1980, and which was considered on its merits, was relevant only to the extent it provided a basis for benefits from 1980. That evidence has no relevance to any reopening of the August 31, 1971 determination because such evidence was submitted well beyond the period provided in section 404.-988(b) of the regulations and, accordingly, the determination was administratively final. For that reason, I concur with the majority that the claimant failed to demonstrate a statutory ground on which to reopen the 1971 determination after almost nine years had elapsed.

With respect to the Secretary's award of benefits beginning in 1980, I must take exception to certain of the language in the majority opinion:

> Following inexorable logic, had the point been preserved for appeal, which it was not only because of the exercise by the Agency of its discretion in favor of John H. Robinson, we might well be compelled to require the striking out of the award of benefits from 1980 foward, as well as affirm the denial of benefits from 1971 to 1980. *See McGowen, supra*, 666 F.2d at 67. However, we are not called upon to address the question insofar as the merits are concerned, inasmuch as the Agency humanely consented to and has not appealed from the award of benefits from 1980 on.

*Supra* at 1146 (footnotes omitted). I do not believe inexorable logic under *McGowen* would lead to striking the award of benefits from 1980 forward were the issue before us.

The Secretary has waived any assertion of res judicata as to the benefits from 1980 on. The Secretary did not promptly appeal at the time the first district court opinion was issued (when that court found that there had been a reopening of the 1971 claim). Instead, the Appeals Council sent the case to the Administrative Law Judge for a hearing on paternity. When the Administrative Law Judge recommended that benefits be granted as of 1971, the Appeals Council explicitly stated that it did not adopt that part of the decision. But the Appeals Council did not reject the recom-

mended benefits from 1980 on; instead, it referred to the "new and material evidence" submitted with the 1980 application, which was "considered on its merits," and held that the evidence was relevant to the extent that it provided a basis for finding that the claimant was the "child" of the deceased wage earner. To date, the Secretary has not appealed the grant of benefits beginning in 1980. Therefore, the Secretary has waived any defense of res judicata as to the 1980 application.

It seems without question that the Secretary's eventual award of benefits beginning in 1980 was not based on "largesse"; instead, it reflected the solid evidence establishing both paternity and living with/contributing to. Upon the 1980 application, Robinson put forward extensive new and material evidence consistent with the earlier affidavits.

The award of benefits from 1980 on was upheld at every administrative and judicial level following the first remand. Had the Secretary refused to grant benefits beginning in 1980, given the new and material evidence presented with the second application, the decision I believe would have been reversed on appeal. For that reason, although I concur in the majority's result of affirming the award of benefits in 1980, I cannot concur with any language indicating that such a grant was due basically to a humane impulse on the part of the Secretary and that it did not rest on a firm statutory ground.*

For the same reason, I must dissent from the majority's denial of attorney's fees. At issue are attorney's fees for the judicial review commenced on December 15, 1981, and culminating in the district court's order of September 27, 1984. Plaintiff asks for fees exclusively for services in a non-administrative setting, stating that he will forego requesting fees for administrative proceedings because those fees were paid from the award made on Robinson's 1980 claim.

Because the attorney's fees sought are only for the 1980 claim, the majority is compelled by the needs of consistency to deny the fees because of its view of the merits of the 1980 claim. The majority states:

Since the award for 1980 on was the result of administrative largesse, not properly compellable by legal process, and one for which an appeal by John H. Robinson was not required, the administrative decision having been in his favor, the situation is not an appropriate one for allowance of attorney's fees under the Equal Access to Justice Act.

*Supra* at 1148. As I argue above in regard to the 1980 claim, it is my reading of the facts that the granting of benefits beginning in 1980 was the result not of "largesse," but the new and material evidence which was submitted with the 1980 claim.

Under the Equal Access to Justice Act, a prevailing party may obtain attorney's fees only when the Government cannot show that its position was substantially justified or that special circumstances would make an award unjust. 28 U.S.C. § 2412(d)(1)(A). Although the term "substantially justified" is not defined in the Act itself, legislative history and caselaw have given it its meaning. The Fourth Circuit has held that "the government's position in the district court normally would be substantially justified if, as is usual, the United States attorney does no more than rely on an arguable defensible administrative record." *Guthrie v. Schweiker*, 718 F.2d 104, 108 (4th Cir.1983). To be "substantially justified" the Government's position cannot be just "non-frivolous." Instead, the Government must be proceeding on the basis of a solid legal claim or defense. *McDonald v. Schweiker*, 726 F.2d 311, 316 (7th Cir.1983).

The Secretary argues that there was a factual basis in the record and a basis in the law for her decision rejecting the award of benefits beginning in 1980, forcing Robinson to appeal to the district court for the first time. The majority opinion agrees that the Government took a legally-supportable position that the post-1980 benefits should be denied. However, the district court in its review of that initial denial

---

* *See* attached Appendix.

of the post-1980 benefits found that the Secretary had no rational or justifiable reason for rejecting the uncontradicted affidavits of Robinson's witnesses and found that there was "no evidence" to support the Secretary's decision. Appendix at 27–28.

Although it is true, as the district court noted on its second review, that the case has presented complex and difficult factual and legal issues because of its novel setting, Appendix at 106–07, the complexity applies only to the 1971 reopening issue. The issue of whether to grant post-1980 benefits was essentially a straightforward application of new and material evidence, and the initial Government position was supported by "no evidence." This petition for legal fees and expenses is based upon Robinson's prevailing over the Secretary only on the 1980 claim. With respect to that petition, I believe that attorney's fees should be awarded.

Finally, although I dissent from the majority's denial of attorney's fees for the post-1980 benefits litigation, I consider the request of $16,128.12 in fees too large in a case wherein the claimant was only awarded $14,727.90 (through April 1984). I would remand the case to the district court for a hearing on an appropriate award of attorney's fees.

APPENDIX

Department of

HEALTH AND HUMAN SERVICES
SOCIAL SECURITY
ADMINISTRATION

Office of Hearings and Appeals

DECISION OF APPEALS COUNCIL

In the case of Mary J. Young o/b/o
John Howard Robinson

(Claimant)

John H. Jones (Deceased)

Claim for Child's Insurance Benefits

(Social Security Number)

241–50–1126

The United States District Court for the Middle District of North Carolina remand-ed this case (Civil Action Number C–81–817–G) to the Secretary of Health and Human Services for further administrative action. Thereafter, the Appeals Council remanded the case to an administrative law judge.

On July 14, 1983, the administrative law judge issued a recommended decision and advised the claimant and counsel that any exception, objection, or comment concerning the recommended decision should be filed with the Appeals Council within twenty (20) days. None has been received.

In his recommended decision the administrative law judge, at least implicitly, determined that the court, by its order adopting the magistrate's findings and recommendations, effectively precluded any finding other than that the deceased wage earner was the biological father of the claimant, and that he was living with and contributing to the claimant's support as of January 13, 1966, when the deceased wage earner became disabled. Accordingly, the administrative law judge reconsidered the extensive record in this case and concluded that the claimant is the "child" of the deceased wage earner pursuant to section 216(h)(3)(c) of the Social Security Act. The Appeals Council adopts this part of the recommended decision.

The administrative law judge also concluded, as did the court, that the administrative review of the claimant's application filed on April 30, 1980, had the effect of reopening the determination made on the earlier application filed on June 8, 1971. Thus, the administrative law judge recommended that the claimant be found entitled to Child's Insurance Benefits based on the prior application filed on June 8, 1971. The Appeals Council specifically does not adopt this part of the recommended decision.

In deciding that the determination dated August 31, 1971 (denying the claimant's June 8, 1971, application) should be reopened, the administrative law judge relied on the pronouncement of the Fourth Circuit in *McGowen v. Harris*, 666 F.2d 60

(4th Cir.1981) which was cited by the magistrate in a footnote to his findings and recommendation. The magistrate stated that "By reason of the Secretary's review of the plaintiff's application of April 30, 1980 on the merits, the Secretary has effectively reopened his earlier adverse determination in regard to plaintiff's first application" and he cited *McGowen* as authority. The Appeals Council believes that the present case is distinguishable from *McGowen.*

In *McGowen* an application filed in July 1965, was initially denied in February 1976, and no further action was taken by the claimant. The second application, which was held to effectively reopen the February 1976, initial determination despite the provisions of administrative res judicata, was filed in March 1978, well within the 4-year period provided for reopening by Regulations No. 4, section 404.988(b) (20 CFR 404.988(b)). However, in the present case the application filed on June 8, 1971, was initially denied on August 31, 1971. The second application was filed almost 9 years later on April 30, 1980, considerably beyond the 4-year period for reopening provided by section 404.988(b) of the regulations. Further, none of the criteria for reopening "at any time" provided in section 404.988(c) are applicable in this case. Accordingly, the Appeals Council is of the opinion that the new and material evidence submitted with the application dated April 30, 1980, and which was considered on its merits, was relevant only to the extent that it provided a basis for finding that the claimant was the "child" of the deceased wage earner and, therefore, entitled to Child's Insurance Benefits. However, the Appeals Council is of the further opinion that the same new and material evidence has no relevance to the reopening of the August 31, 1971, determination because such reopening is well beyond the period provided in section 404.988(b) of the regulations and, accordingly, said determination was administratively final.

For the foregoing reasons, the Appeals Council adopts the findings and conclusions in the recommended decision as modified herein. It is the decision of the Appeals Council that, based on the application filed on April 30, 1980, the claimant is entitled to Child's Insurance Benefits on the account of the deceased wage earner, John H. Jones, under the provisions of section 202(d) of the Social Security Act, as amended.

APPEALS COUNCIL

(signed) _____
Richard F. Brodsky, Member
(signed) _____
Joseph E. Doneghy, Member

Date: NOV 11 1983